**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ARTHUR DENNISON**,

    **Petitioner**,

    **v.**                   **CASE NO.  2:15-cv-1344**

**WARDEN, ROSS**              **JUDGE GEORGE C. SMITH**
**CORRECTIONAL INSTITUTION**,

                                **Magistrate Judge Kemp**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the Respondent's Answer/Return of Writ (Doc. 8)  and the Petitioner's Reply and Amended Reply  (Docs. 11 and 12).   For the reasons that follow, it will recommended that the Court deny the petition and dismiss this action.

## I. Procedural Background

In an indictment filed on December 8, 2009, the Franklin County, Ohio grand jury charged Petitioner with a total of eleven felony counts, all arising out of a home invasion robbery that took place in Columbus on March 15, 2009.  As one might imagine, the charges included burglary, robbery, kidnaping, and weapons offenses. He was also charged with rape.

Petitioner pleaded not guilty.  After a substantial delay, the case was tried to a jury beginning on June 11, 2012.  The jury returned a verdict of guilty on nine counts; Petitioner

was acquitted of the rape charge, and the trial judge found him guilty of possessing a weapon while under a disability. In an entry filed on July 26, 2012, the trial court sentenced Petitioner to 74 years of imprisonment. *Return*, Ex. 13.

Petitioner timely appealed, and the State of Ohio cross-appealed, raising an issue about merging counts for purposes of sentencing as well as an issue about the sentence on the firearm specifications. Petitioner raised six assignments of error, involving (1) a speedy trial claim, (2) a due process claim based on alleged hostility of the trial judge toward defense counsel, (3) the reliability of the victims' identification of Petitioner as one of the perpetrators, (4) a Confrontation Clause issue, (5) a claim of prosecutorial misconduct, and (6) an evidentiary issue concerning admission of recordings made of certain phone calls placed by Petitioner while he was in jail awaiting trial. *See* Ex. 17.

The State fared better on appeal than Petitioner did. The Tenth District Court of Appeals overruled all of Petitioner's assignments of error but sustained both of the State's, remanding the case for resentencing. *State v. Dennison*, 2013 WL 6700392 (Franklin Co. App. Dec. 17, 2013). Petitioner appealed this decision to the Ohio Supreme Court. In his memorandum in support of jurisdiction (*Return*, Ex. 22), he presented these five issues:

> Proposition of Law No. I: The doctrine of invited error applies to a sentencing error the state induced the trial court to make, even if the sentence is otherwise required by statute.

> Proposition of Law No. II: If a declarant knew his or her statements in a phone call from jail were being recorded, this is a significant factor the court must consider in determining whether the statements are testimonial, under the Confrontation Clause of the Sixth Amendment of the United Sates Constitution and the Ohio Constitution's right of confrontation embodied by

-2-

Article 1, Section 10.

Proposition of Law No. III: Pursuant to the speedy trial provisions of R.C. 2945.71 and 2945.72, and the Sixth Amendment of the United Sates Constitution and Ohio Constitution, a continuance by counsel does not operate as a speedy-trial waiver if counsel was unreasonably unprepared and the continuance was over his client's objection.

Proposition of Law No. IV: Under the speedy trial provision of the Sixth Amendment of the United States Constitution, delay calculated to gain an advantage over the accused is weighted heavily against the state.

Proposition of Law No. V: Under the speedy trial provision of the Sixth Amendment of the United States Constitution, delay caused by a calloused indifference of the court in bringing the accused to a speedy trial is weighed heavily against the state.

On April 23, 2014, the Ohio Supreme Court declined to accept the appeal. *State v. Dennison*, 138 Ohio St.3d 1469 (Apr. 23, 2014).

After remand, Petitioner was again sentenced to 74 years in prison. He again appealed, this time raising only three issues, all related to sentencing: (1) that the sentence penalized Petitioner for going to trial, (2) that consecutive sentences were improperly imposed on convictions for allied offenses of similar import, and (3) that the court violated Ohio law when it imposed consecutive sentences without making certain required findings. *Return,* Ex. 27. This time, the court of appeals found merit in one of the issues raised on appeal and remanded the case again for a sentencing procedure which complied with R.C. §2929.14(C)(4). *State v. Dennison*, 2015 WL 1373197 (Franklin Co. App. March 26, 2015). His success on appeal did not materially help Petitioner; the trial court, for the third time, sentenced him to 74 years in prison. *Return,* Ex. 31. That prompted a third appeal, which

-3-

was still pending at the time the return was filed. According to the website of the Franklin County Court of Common Pleas, the last event in that appeal was the filing of the transcript on July 29, 2015. It does not appear that Petitioner's counsel has filed a brief on appeal, and there is nothing indicating what issues he intends to raise in that appeal, although the Court assumes that they would relate only to alleged errors committed as part of the resentencing.

In his federal habeas corpus petition, Petitioner raises four grounds for relief. The first, which parallels the speedy trial claim raised in state court, reads as follows:

> **GROUND ONE**: The petitioner was denied his statutory right to a speedy trial, and speedy trial right under the Sixth Amendment of the U.S. Constitution and Ohio Constitution, and Ohio Revised Code 2945.71, 2945.73 also due process right under the 14th Amendment of the U.S. Constitution.

The second and third grounds for relief raise issues about the jury instructions on accomplice testimony and about the admission of allegedly perjured testimony. Ground Four asserts a claim of cumulative error. Respondent contends that only ground one was preserved for habeas corpus review, and Petitioner's reply argues only the speedy trial claim.

## II. <u>The Facts</u>

Because, as discussed below, the only issue preserved for review on its merits is the speedy trial claim, the Court will focus its attention on the facts relating to that claim. Here is how they are set out in the state court of appeals opinion:

> After his indictment, appellant's appointed counsel requested continuances on multiple occasions. Appellant, however, did not agree with all of counsel's continuance requests, and their relationship deteriorated. Appellant himself signed only two speedy-trial waivers. Ultimately, in

November 2010, appellant's first trial counsel was replaced by a new attorney, who sought additional time to become familiar with the case. Thereafter, the trial was continued multiple times at the request of appellant's second appointed counsel.

Some of defense counsel's continuance requests were based on the fact that appellant had engaged in telephone conversations while in jail that had been recorded and which the state considered introducing as evidence at trial. The state produced the tapes for defense counsel, who then sought additional time to listen to them.

Trial commenced on June 11, 2012, approximately two and one-half years after the indictment.

*State v. Dennison, supra*, at *1-2.  Additional facts relating to the speedy trial claim are set forth in the Court's discussion of the state courts' ruling on that claim.

## III. <u>Procedural Default</u>

Respondent asserts that grounds two and three contained in the petition were never presented to the state courts for review.  Petitioner states in his petition that ground two was raised on direct appeal, but this Court, like Respondent, cannot find any mention of that claim in the appellate briefs or the court of appeals' opinion, and it was not included in the issues which he presented to the Ohio Supreme Court.  Petitioner does not identify where ground three was raised.  He did present a claim of improper eyewitness identification to the state courts, but the claim in his habeas petition is that the trial court and the prosecutors were aware that one of the victims had shown photographs of Petitioner to other victims prior to the time that one of them (identified in the state court as S.D.) selected his picture from a photo array and did nothing to correct allegedly false testimony given on that subject.  That is not how the issue was argued in the state courts,

however.  The question then becomes whether these two claims were procedurally defaulted because Petitioner did not give the state courts a full and fair opportunity to correct any errors which might have occurred during the trial.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...."  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.  This "requires the petitioner to present 'the same claim under the same theory'

to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must

demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in

state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Here, Petitioner did not present his jury instruction claim to any state court, nor does it appear that, at trial, his counsel raised this objection.  There was a brief discussion of other issues about jury instructions (*see Return*, Doc. 8-12), but nothing about accomplice testimony.  The failure to make a contemporaneous objection to a jury instruction at trial waives any claim of error (other than plain error) on appeal, and the failure to raise an issue on appeal, either at the court of appeals or supreme court level, is an additional waiver of such a claim.  *See, e.g., Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (noting that certain grounds for relief relating to jury instructions were "defaulted, because [the petitioner] did not raise them before the Ohio Court of Appeals, or because the court of appeals reviewed them only for plain error due to [the petitioner]'s failure to comply with Ohio's contemporaneous objection rule").  Petitioner has not argued that these procedural defaults can be excused by any explanation that would be sufficient under *Murray v. Carrier*.  Ground two is therefore clearly defaulted.

As to ground three, as noted above, a claim must have been presented to the state courts in the same way that it is asserted in federal habeas corpus in order for the claim to be addressed here.  There is some relationship between the eyewitness identification claim presented to the Tenth District Court of Appeals and the one presented in Petitioner's federal habeas filing - both relate to the in-court identification of Petitioner by one of the victims - but they are not the same claim.  In the state court, Petitioner argued that the in-court identification by S.D. was tainted by her having previously viewed photos of Petitioner shown to her by another victim of the home invasion (a victim who knew

-10-

Petitioner beforehand and was convinced he was one of the three perpetrators). Here, he makes a claim about perjured testimony. The constitutional analysis of each claim is different. Even if the Court were to consider them as sufficiently related so as to avoid procedural default at the court of appeals level, however, Petitioner did not appeal the court of appeals' ruling on the eyewitness identification issue to the Ohio Supreme Court. That is a separate procedural default, *see e.g., Lewis v. Randle,* 36 Fed.Appx. 817, 818 (6th Cir. Apr. 30, 2002) ("[Petitioner] appealed the denial of his motion for a new trial to the Ohio Court of Appeals but not to the Ohio Supreme Court. Accordingly, he is foreclosed from presenting his claim in federal court ..."). Again, Petitioner has presented nothing which would excuse the procedural default, nor has he made a showing of actual innocence. Under these circumstances, the Court agrees with Respondent that grounds two and three were procedurally defaulted.

## IV. <u>Ground One</u>

Respondent concedes that Petitioner properly preserved his federal constitutional speedy trial claim for review, and the Court agrees. Consequently, the question is whether the state courts' determination of that claim was contrary to, or represented an unreasonable application of, federal law as determined by the United States Supreme Court. This standard of review is further explained below.

### A. <u>Standard of Review</u>

Petitioner seeks habeas relief under 28 U.S.C. §2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of

state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, --- U.S. ----, ----, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) ("AEDPA... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).  The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1).

Habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d)(1); *Coley v. Bagley,* 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir. 2006)); *see also* 28 U.S.C. §2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ...case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407....

*Coley, supra*, at 748-49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable,...[t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520– 21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal

conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster, supra* at 1398.

## B. Discussion

Because the AEDPA standard of review involves a close consideration of the state court decision, the Court begins its discussion there. The court of appeals, after rejecting Petitioner's state-law speedy trial claim (a claim which, because it does not involve issues of federal law, is not subject to review in a federal habeas corpus action), turned its attention to his federal constitutional claim. In rejecting that claim as well, the state court provided this rationale, *see State v. Dennison, supra*, at *7-9:

> Appellant further argues in his first assignment of error that he was denied his constitutional right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Ohio Constitution, Article I, Section 10. *Brime* at ¶ 11. In determining whether those rights have been violated, we first consider whether the length of the delay was presumptively prejudicial. *State v. Mohamed*, 10th Dist. No 08AP–960, 2009–Ohio–6658, ¶ 22–23. If it was, we then consider and balance the four

-14-

factors identified in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), *i.e.*, length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Brime* at ¶ 11.; *Mohamed* at ¶ 21 citing *State v. Selvage*, 80 Ohio St.3d 465 (1997) (adopting *Barker* test for purposes of Article I, Section 10 of the Ohio Constitution).

In general, delay is deemed "presumptively prejudicial" as it approaches one year. *Mohamed* at ¶ 24. In this case, two and one-half years passed from appellant's arrest on December 8, 2009, until his trial, which began on June 11, 2012. We find that a delay of this length is presumptively prejudicial and that a balancing of the *Barker* factors is therefore necessary.

### 1. *Length of Delay*.

A delay of two and one-half years between arrest and trial is significant. But the United States Court of Appeals, Sixth Circuit, has recognized that a delay of eleven years prior to trial, while atypical, was not unconstitutional when weighed along with the other *Barker* factors. *U.S. v. Young,* 657 F.3d 408, 420 (6th Cir.2011). *See also State v. Martin*, 16 Ohio App.3d 172, 174 (10th Dist.1984) (noting that there was no constitutional speedy-trial infringement found in *Barker* where a period of more than five years intervened between Barker's arrest and his conviction). In short, we find that, although the length of the delay between appellant's arrest and trial provides some weight in favor of appellant's constitutional speedy-trial argument, it is not dispositive.

### 2. *Reason for Delay*

The reason-for-delay factor "is concerned with whether the government or the defendant is more to blame for the delay." *State v. Quinnie,* 10th Dist. No. 12AP–484, 2013–Ohio–1208, ¶ 14, citing *Doggett v. United States,* 505 U.S. 647, 651 (1992). Examination of the record justifies the conclusion that, in large part, appellant or appellant's counsel was responsible for the delay between his arrest and trial.

Appellant repeatedly filed pro se motions and correspondence addressed directly to the judge presiding over his case, complaining about the conduct of the prosecutors, his appointed counsel, and the court itself. As early as March 1, 2010, appellant acknowledged that he felt that his assigned counsel was not adequately defending him. On November 16, 2010, appellant asserted in open court his dissatisfaction with his first appointed counsel and

repeated his belief that the state was responsible for that attorney having been chosen to defend him. He acknowledged that he had filed a disciplinary complaint against his own counsel. On that date, the court appointed new defense counsel, one of four attorneys appellant had listed as his choices to undertake his representation. Clearly, the appointment of new defense counsel nearly a year after appellant's arrest was the direct result of appellant's conduct—not that of the state, and appointment of new counsel necessarily delayed the trial.

We conclude that the delay of appellant's trial was attributable in substantial part to appellant's own conduct or that of his counsel. Accordingly, the reason-for-delay factor established in *Barker* weighs heavily against appellant's assertion that he was deprived of the constitutional right to a speedy trial.

### 3. *Appellant's Assertion of Speedy-trial Right*

This factor weighs in appellant's favor. He formally raised the speedy-trial issue as early as May 2010 when he had been in county jail for approximately five months and filed a pro se motion to dismiss the prosecution on speedy-trial grounds. He reasserted that right on numerous occasions.

### 4. *Prejudice to Appellant*

In assessing prejudice in the context of a *Barker* analysis, we consider "the specific interests the right to a speedy trial was designed to protect: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's defense will be impaired by dimming memories and loss of exculpatory evidence." *Quinnie* at ¶ 16.

"[F]acing criminal charges for an extended period of time necessarily entails some level of anxiety and concern." *Id*. A blanket statement of anxiety caused by delay is, however, insufficient to establish prejudice. *Id*., citing *State v. Glass*, 10th Dist. No. 10AP558, 2011–Ohio–6287. But appellant does not argue that he was prejudiced by the delay by being unable to call witnesses who were no longer available at the time of trial, or that evidence had become unavailable during the delay.

Appellant does argue that he was prejudiced by the delay of his trial in that the state used audiotapes of telephone conversations he engaged in

while in jail. He argues that, had the trial taken place sooner, those conversations would not have occurred and could not have been used against him. For the reasons discussed above relative to appellant's statutory right to a speedy trial, we do not find that circumstance to be of great weight in balancing the *Barker* factors.

Accordingly, in balancing all of the *Barker* factors, we find that the delay in trial experienced by appellant was not unconstitutional. As did the *Young* court, we observe that "finding ways to more quickly move this case forward would have been preferable to the actual pace of proceedings." *Young* at 420. But, the reasons for the delay in trial were largely due to the conduct of appellant himself or appellant's counsel—not dilatory conduct by the state. We therefore reject appellant's argument in his first assignment of error that he was denied his constitutional right to a speedy trial.

We have rejected appellant's arguments that he was denied his right to a speedy trial as provided both by Ohio's speedy-trial statute and by the state and federal Constitutions. We therefore overrule appellant's first assignment of error.

Petitioner, in his reply, suggests that it was the state trial judge who engaged in "dilatory conduct" and that the reason for the delay was to continue to gather evidence against him from telephone calls made from the jail. He argues that in the first seven months after the indictment, the State had no case, and but for the delay, which allowed the State both to gather the phone call evidence and obtain evidence from the other two perpetrators, the case would have been dismissed. He also blames a substantial portion of the delay on the ineffective nature of his counsel's representation of him, and he points out that he repeatedly raised the speedy trial issue during the roughly 30-month delay that occurred here. He also disputes that any delay in the filing and disposition of the motion to disqualify the trial judge was his fault, noting that the court reporter took five months to prepare a transcript and that his attorney unnecessarily delayed filing the motion.

The state court of appeals' analysis of the reasons for the delay in bringing Petitioner to trial focused largely on the fact that he continually expressed dissatisfaction with his first attorney, ultimately filing a disciplinary complaint against him and being appointed a new attorney approximately one year after his arrest.  While that may account for twelve of the thirty months of delay involved here, it does not address any other reasons for the delay.

In his appellate brief (*Return*, Ex. 17), Petitioner, although he did not provide any timeline for different events which delayed the trial, put much of the blame on the prosecutors for continually providing the jail recordings to defense counsel, including recordings they had no intent to use at trial, thus causing defense counsel to request more time to review the tapes.  Most of that argument, however, also focuses on the first year of the delay, and on the conduct of Petitioner's then-defense counsel, Mr. Hayes, who was replaced on November 16, 2010.   He presented little or no argument about the reason for the delay from the first trial date set after new counsel became involved (April 18, 2011) to the actual trial date in June, 2012.  The state court docket reflects that, during that time, Petitioner waived his speedy trial rights as to the continuance of the trial from April 18, 2011 to June 13, 2011; that counsel filed a motion to suppress on April 18, 2011; that counsel waived Petitioner's speedy trial rights as to the next two continuances, which waivers Petitioner refused to sign, although he acknowledged that he had filed a motion to recuse the trial judge which had not been decided; that Petitioner signed a speedy trial waiver for a continuance of the trial from September, 2011 to January, 2012, granted for purposes of allowing counsel to have additional time to prepare; that defense counsel asked for another

continuance to April, 2012, which Petitioner did not expressly agree to; and that defense counsel asked for the final continuance, although, again, Petitioner did not sign the speedy trial waiver relating to that continuance. Hearing transcripts filed with the *Return* show that counsel asked for the final two continuances so that he could obtain an expert witness. *See* Doc. 8-6, 8-7.

This Court has, in *Alexander v. Warden, Ross Correctional Inst.,* 2011 WL 1771114, *9 (S.D. Ohio March 22, 2011), *adopted and affirmed* 2011 WL 1753864 (S.D. Ohio May 9, 2011), *aff'd* 485 Fed.Appx. 97 (6th Cir. June 18, 2012), previously commented on the appropriateness of the approach taken by the Ohio courts of appeals to federal speedy trial claims. The Court's words directly apply here:

> The Ohio Court of Appeals correctly identified the applicable standard of review adopted in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and followed in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), in addressing the constitutional issue. As the state appellate court recognized, the Sixth Amendment right of the accused to a speedy trial begins at the time of "arrest, indictment, or other official accusation" and involves a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long;" (2) "whether the government or the criminal defendant is more to blame for the delay;" (3) "whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he suffered prejudice as the delay's result." *Doggett,* 505 U.S. at 651, 655; *see also Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001).

Did the Ohio court of appeals make an unreasonable determination when it applied these four factors to Petitioner's case? For the following reasons, the Court finds that it did not.

First, the state court correctly recognized that a thirty-month delay was presumptively prejudicial. Next, it analyzed the reasons for that delay. In doing so, it reasonably found that although the State may not have been faultless, much of the initial delay was due to issues which arose between Petitioner and his attorney, the appointment of a new attorney, and the filing of a motion to recuse the trial judge. The attorney's delays are not attributable to the State, and "[w]hen a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim." *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011). Although the delay in providing a transcript on the recusal motion may not have been entirely attributable to Petitioner, at least some of it resulted directly from his filing a motion. Further, Petitioner did consent to some of the continuances of the trial, and the final round of continuances were requested by his second attorney, Jeffrey Moore, for purposes of allowing Mr. Moore to be adequately prepared to try the case. The state court did not make an unreasonable determination as to this factor.

Turning to the other factors, the state court recognized that Petitioner did assert his speedy trial rights repeatedly, and it weighed this factor in his favor. Petitioner does not appear to take issue with that portion of the decision. Lastly, on the key factor of prejudice, Petitioner argues primarily that the delay allowed the State to collect more evidence against him through recordings of phone calls he made from jail, but the state court found - and its factual findings are presumed to be correct, *see* 28 U.S.C. §2254(d) - that most of the calls used in evidence were made early in the 30-month period, so that the delay did not assist the State in gathering that evidence. Petitioner claims that the delay also assisted the State

-20-

in getting the other perpetrators to testify against him, but he cites to no evidence in the record which supports that claim, and he did not make this claim in his appellate brief. Given the record which it had before it, the state court of appeals did not act unreasonably in finding that Petitioner suffered no significant prejudice as a result of the delay - especially that portion of the delay which exceeded one year, which is the threshold measure for when post-indictment delay becomes presumptively unreasonable under *Barker*.

The Court of Appeals has said that, of the four *Barker* factors, "[t]he most important factor under prejudice is possible impairment of the defense." *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993). And in *United States v. Howard,* 218 F.3d 556, 564 (6th Cir. 2000), it noted that "a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay." Given that the state court's finding on this most important factor was not unreasonable, it was also not unreasonable for that court, when balancing the four *Barker* factors, to have concluded that no speedy trial violation occurred. Again, the question here is not whether this Court, were it free to make an independent review of the record, would have reached the same conclusion; the issue is whether the state court unreasonably applied the *Barker* analysis, which is the correct methodology, to this set of facts. Being unable to conclude that it did so, the Court finds no merit in Petitioner's first ground for relief.

## V.  Cumulative Error

Petitioner's fourth ground for relief asserts that he was denied a fair trial through the cumulation of the errors he has identified.  Such a claim, however, does not support a grant of federal habeas corpus relief.  The Court of Appeals, citing, among other cases, *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002), noted that it had "held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).   This Court is bound to follow that rule, and cannot grant Petitioner relief on his fourth ground.

## VI.  Recommended Disposition

For the reasons set out above, the Court recommends that the petition for a writ of habeas corpus be **DENIED** and that this case be **DISMISSED**.

## VII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge